IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARIA RIOS, on her behalf and on
behalf of her minor son, D.R.,**

      **Plaintiffs,**

vs.                                                                                         No.  08cv1213 JH/GBW

**DOÑA ANA COUNTY, LINDELL
WRIGHT, BRENT EMMANUEL,
SUSAN RIEDEL, and JAMES DICKENS ,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants Susan Riedel and James Dickens's Motion for Summary Judgment Based Upon Qualified and Absolute Immunity & Memorandum in Support Thereof [Doc. No. 96] filed on June 23, 2010, and fully briefed on August 2, 2010.[1] Defendants Riedel and Dickens move for summary judgment asserting they are entitled to absolute immunity from suit, or in the alternative, that they are entitled to qualified immunity. Having reviewed the motion, the memoranda in support and in opposition, and the applicable law, the Court finds that Defendants Riedel and Dickens's motion for summary judgment on the grounds of absolute immunity is not well taken and will be **DENIED**.  However, the Court finds

---

[1] The action was stayed pending resolution of Defendants Doña Ana County, Lindell Wright and Brent Emmanuel's appeal to the Court of Appeals for the Tenth Circuit.  *See* Notice of Appeal (Doc. No. 130, filed on October 15, 2010).  On February 15, 2011, the Court of Appeals dismissed the appeal upon consideration of the parties' stipulation to voluntarily dismiss the case.  *See* Doc. No. 137-1.  On March 11, 2011, the Court approved the settlement reached between Plaintiffs and Defendants Doña Ana County, Lindell Wright and Brent Emmanuel and dismissed with prejudice these defendants.  *See* Doc. Nos.  150 and 151.

that Defendants Riedel and Dickens's motion for summary judgment on the grounds of qualified immunity is well taken and will be **GRANTED**.

## I. Factual Background

The facts of the case are fully detailed in the Honorable Don J. Svet's June 21, 2010 Report and Recommendation [Doc. No.94].  Accordingly, the Court will set forth only the facts relevant to the issue of whether Defendants Riedel and Dickens are entitled to absolute or qualified immunity.

## II.  Standard of Review

The Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P.56(c).  The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1609 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).  Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991).

However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10 (1986). If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court will consider the motion for summary judgment in light of these standards.

Qualified immunity protects government officials from individual liability in a §1983 action unless the officials violated clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). The affirmative defense of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). For this reason, special standards apply to a summary judgment motion raising the defense of qualified immunity. *Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 779 (10th Cir. 1993).

When a defendant pleads qualified immunity, the plaintiff must then make a two-part showing. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff bears the burden of (1) presenting evidence that the defendant's actions violated a federal constitutional or statutory right and (2) showing that the federal right was clearly established at the time of the challenged conduct. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). The court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818 (2009). When, as here, the defendant seeks summary

judgment on the grounds of qualified immunity, the court views the evidence in the light most favorable to the plaintiff.  *Cortez,* 478 F.3d at 1115.

In determining whether the right was clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).  The action alleged to have violated a right does not have to have previously been held unlawful, however, "in light of pre-existing law the unlawfulness must be apparent."  *Id.*  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), *overruled in part*, *Williams v. City & County of Denver*, 99 F.3d 1009, 1014-1015 (10th Cir.1996).  Unless both prongs of the test are satisfied, the court must grant qualified immunity.  *Clanton v. Cooper,*129 F.3d 1147, 1153-54 (10th Cir. 1997).  Only if the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment– showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000)(quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).

### III.  Discussion

In determining whether absolute or qualified immunity applies to a given situation, the Court looks to the function being performed rather than to the office or identity of the defendant. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S.Ct. 2606, 2613 (1993).  State prosecutors are absolutely immune from actions resulting from conduct "intimately associated with the judicial phase of the criminal process. " *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984,

995 (1976)).  Thus, prosecutors are protected by absolute immunity from civil liability for initiating a prosecution and presenting the case at trial.  *Id.* at 430-31, 96 S.Ct. at 995-96; *Buckley*, 509 U.S. at 268, 113 S.Ct. at 2613.  They also are absolutely immune for conduct in preparing for those functions, e.g., evaluating and organizing evidence for presentation or determining which offenses are to be charged.  *Buckley*, 509 U.S. at 270, 113 S.Ct. at 2615. However, advising police during the investigative stage of a case that they have probable cause to arrest is not an advocacy function of a prosecutor and is not entitled to absolute immunity. *Burns v. Reed,* 500 U.S. 478, 493, 111 S.Ct. 1934, 1943 (1991)(holding that advising the police in the investigative phase of a criminal case is not so intimately associated with the judicial phase of the criminal process and thus not entitled to absolute immunity).

Based on the facts of this case, the Court finds that Defendants Riedel and Dickens were advising Defendants Wright and Emmanuel as to whether there was probable cause to arrest Plaintiff Rios during the investigative stage of the case.  Accordingly, Defendants Riedel and Dickens are not entitled to absolute immunity.  Nonetheless, for the reasons set forth below, Defendants Riedel and Dickens are entitled to qualified immunity.

Defendants Riedel and Dickens contend they are entitled to qualified immunity.  First, Defendant Riedel claims that when Defendant Wright contacted her she did not give an opinion as to Fielder's custodial interference claims as she was assigned to the prosecution of Fielder's criminal case following the New Mexico Court of Appeals remand.  Defendant Riedel claims she "may have suggested that Wright continue to investigate the matter." Mot. Summ. J. at 5, Undisputed Facts Nos. 17-19.  Defendant Riedel claims she directed Defendant Wright's telephone call to Defendant Dickens.  *Id.* (Undisputed Fact No. 19).  Specifically, Defendant

5

Riedel testified, "I didn't get enough information to say how I would have advised one way or the other."  Pls.' Resp.; Ex. E, Riedel Dep., p. 12, lines 12-13.

      Defendant Dickens testified at his deposition as follows:

Question:      What do you recall that [Defendant Wright] told you?

Answer:      He told me that he had spoken to a Mr. Fielder.  Not sure if he gave me the first name or not.  I think he did.  He told me that Mr. Fielder had come to him with a custodial interference matter.  The– he had been determined to be the parent of a fairly young child.  I don't remember if he gave me the age or not.  Told me that the mother was not allowing him to see the child, no contact at all.  The mother had been living in Mexico even though the father indicated he had not wanted the child to leave the United States, had not allowed– had not signed any sort of passport paperwork. That first conversation, he told me that Mr. Fielder had seen the child only back when he was incarcerated.  I believe it was in another state, I'm not real sure.  That the mother had brought him to visit.  But as soon as he got out of prison, the mother had then not allowed him to have physical contact with the child.  That there were incidents where the mother would say that she would allow contact if he broke up with his current wife or girlfriend.  I don't remember the relationship.  And that there had actually been contact where she had come into town, met at a restaurant and then refused to let him see his child unless he broke it off with the current wife.  I believe there was some conversation about allowing contact if he paid more child custody.  And that I believe Mr. Fielder indicated that he believed the mother was in town.  But, again, Investigator Wright had not been able to contact him at that time– or contact her at that time.

Question:     Okay.  Anything else you recall about the facts that he related to you?

Answer:       That there was no custody order between the parents, no court order.

Question:     Okay.  Anything else?

Answer:       I don't remember if we discussed anything else.  I think that's all I remember.

Mot. Summ. J.; Ex. G, Dickens Dep., p. 11, lines 21-25, p. 12, lines 1-25, p. 13, lines 1-8.

Defendant Dickens further testified that he understood Defendant Wright "wanted to know if that would meet the requirements of the custodial interference." *Id.*; Dickens Dep., p. 18, line 25, p. 19, line 1.  In response to Defendant Wright's query, Defendant Dickens testified he told Defendant Wright that "so far it sounds good, but you need to make contact with Ms. Rios."  *Id.*; Dickens Dep., p. 19, lines 7-10.

Plaintiffs have not disputed Defendants Riedel and Dickens's Undisputed Facts Nos. 19 and 20.  As to Undisputed Fact No. 19, Plaintiffs state, "Agreed that both Defendants Wright and Dickens accepted Fielder's statements as factual without asking for relevant jurisdictional information." Pls.' Resp. at 7.  As to Undisputed Fact No. 20, Plaintiffs state, "Agreed that Defendant Dickens accepted Fielder's statements as factual without further investigation and failed to ask Wright about the state that issued Plaintiff's driver's license, license plates.  Agreed that Defendant Dickens did not testify that he gave Defendant Wright any advice on why he should make contact with Plaintiff Rios and what he should ask her." *Id.*  Notably, in their response, Plaintiffs failed to address any of Defendants Riedel and Dickens's arguments regarding their entitlement to qualified immunity.

Additionally, Defendant Wright filed a Crime/Incident report in which he noted in relevant part:

> I then contacted the District Attorneys office to confirm this was custodial interference. I did speak with the chief deputy Susan Riedel. I did inform her there was no parenting plan in place and Maria Rios has obstructed Marvin Fielder from seeing his son over the past three years. I also explained the incident at Golden Corral and how she was using [DR] against Marvin. I also informed her Maria had informed me she was living in Mexico and if [DR] was allowed to leave with Maria she would go back to Mexico and Mr. Fielder would not have an opportunity to have the courts hear his case. I also explained Maria made it very clear to me she was not going to court and she wanted to go back to Mexico and Mr. Fielder was not to see his son. Maria gave admission there was a paternity test in place and acknowledged Marvin Fielder as being the biological father.
>
> Susan Riedel agreed I did have custodial interference but informed me she was the prosecuting attorney on Mr. Fielder['s] other case. To make sure there was no conflict of interest she did refer me to another attorney for a second opinion. I then spoke with deputy district attorney James Dickens. I gave him the same information learned above and he did concur with Susan Riedel the elements fit for custodial interference.

Defs.' Mot. Summ. J.; Ex. D.

The question of immunity is distinct from the question of probable cause. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816-17 (1985). Under the doctrine of qualified immunity, "law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable." *Anderson v. Creighton*, 483 U.S. at 641, 107 S.Ct. at 3039-40. Thus, even assuming, without deciding, that Defendants Riedel and Dickens both advised Defendant Wright there was probable cause to arrest Plaintiff Rios for custodial interference, based on the "*facts*" Defendant Wright provided, their probable cause determination, although mistaken, was reasonable.

There is no dispute between Plaintiffs and Defendants Riedel and Dickens that Defendant Wright provided this information. The dispute exists between Plaintiff Rios and Defendant Wright as to what actually transpired on the day he interrogated and arrested her. Because it was

8

reasonable for Defendants Riedel and Dickens to rely on the information Defendant Wright provided, they are entitled to qualified immunity as no constitutional violation occurred when they advised Defendant Wright there was probable cause to arrest Plaintiff Rios for custodial interference.

> Under New Mexico law:
>
> Custodial interference consists of any person, having a right to custody of a child, maliciously taking, detaining, concealing or enticing away or failing to return that child without good cause and with the intent to deprive permanently or for a protracted time another person also having a right to custody of that child of his right to custody. Whoever commits custodial interference is guilty of fourth degree felony.

N.M.Stat.Ann. §30-4-4(B). Section 30-4-4(B), clearly sets forth two distinct ways that a person, having a right to custody of a child, can commit custodial interference: (1) maliciously taking, detaining, concealing or enticing away a child with the intent to deprive permanently or for a protracted period of time another person also having a right to custody; **or** (2) failing to return that child without good cause and with the intent to deprive permanently or for a protracted time another person also having a right to custody of that child of his right to custody. "The first act constitutes 'taking' interference, and the second, 'failing to return' interference." *State v. Munoz*, 2006-NMSC-005, ¶ 14, 139 N.M. 106, 129 P.3d 142. To be guilty of custodial interference, a defendant need only engage in one of the acts prohibited by the statute, either "taking" interference or "failing to return" interference. *Id.* Moreover, "[b]oth types of custodial interference require malice and the intent to deprive permanently or for a protracted time another person of his or her custodial rights." *Id.* ¶15. "Only the second type, 'failing to return' interference, requires a showing that a defendant acted without *good cause*." *Id.* Finally, in order for the State to have criminal jurisdiction to prosecute custodial interference, the child

must be present in the State when the acts of custodial interference are committed.  *State v. Sung*, 2000 NMCA 31, 128 N.M. 786, 999 P.2d 430.

Plaintiffs contend "Defendants Riedel and Dickens knew or should have known that they did not have probable cause to meet the jurisdictional requirements of custodial interference because they knew Plaintiffs resided in Nebraska and knew or should have known the law required the "taking" to occur in New Mexico."  Pls.' Resp. at 12.  Plaintiffs further argue that, "[a]lthough Defendant DA employees (Riedel and Dickens) admit their knowledge of the law's specific jurisdictional requirements and Defendant Dickens admits he knew Plaintiff did not live in New Mexico, they did nothing to determine whether the jurisdictional requirements [were] met."  *Id.* at 14 (citing to Ex. F, Dickens Dep. and Ex. E, Riedel Dep.).  Specifically, Plaintiffs point to Defendant Dickens's deposition testimony acknowledging that "if [Plaintiff Rios] would purposely seek to conceal the child or remove the child if he was in the state from Mr. Fielder, then that could get us to a custodial interference charge."  *Id.*; Ex. F, Dickens Dep., p. 20, lines 5-8.  Defendant Riedel also testified that the interference "has to occur [in New Mexico]."  *Id.*; Ex. E, Riedel Dep., p. 21, lines 18-23.

However, Defendant Wright reported to Defendants Riedel and Dickens that (1) Plaintiff Rios had obstructed Mr. Fielder from seeing his son over the past three years; (2) Plaintiff Rios was living in Mexico; (3) if D.R. was allowed to leave with Plaintiff Rios she would take D.R. back to Mexico; and (4) Plaintiff Rios made it very clear to Defendant Wright that she was going to Mexico and did not want Mr. Fielder to see his son.  Under these facts, it was reasonable for Defendants Riedel and Dickens to conclude that Plaintiff Rios was violating the custodial interference statute.  D.R. was in New Mexico and Plaintiff Rios was taking D.R. to Mexico with the intent to deprive Mr. Fielder for a protracted period of time from seeing D.R.  Thus, D.R.

was present in the State when the acts of custodial interference were allegedly committed. *See State v. Sung*, 2000 NMCA 31, 128 N.M. 786, 999 P.2d 430.

For the foregoing reasons, the Court finds that Defendants Susan Riedel and James Dickens's motion for summary judgment on the grounds of qualified immunity is granted.

**IT IS THEREFORE ORDERED** that Defendants Susan Riedel and James Dickens's Motion for Summary Judgment Based Upon Qualified and Absolute Immunity & Memorandum in Support Thereof **[Doc. No. 96]** is **DENIED** in part and **GRANTED** in part. Defendants Susan Riedel and James Dickens's motion for summary judgment on the grounds of absolute immunity is **DENIED**. Defendants Susan Riedel and James Dickens's motion for summary judgment on the grounds of qualified immunity is **GRANTED.**

**JUDITH C. HERRERA**
**UNITED STATES DISTRICT JUDGE**